## STRATTON'S PETITION.

On the 4th day of December, 1848, a petition for a highway in a town, was presented to the selectmen and remained pending before them until the 7th day of July, 1849, without any final action having been had by them. On the 7th of July, they met, and considered the petition, but separated without making any decision, and without any adjournment to any other time and place. *Held*, that the omission of the selectmen to act upon the petition for so long a time, was such a "neglect" as gave the Court of Common Pleas, jurisdiction of the subject-matter.

*Held*, also, that the laying out of the road by the selectmen, after the petition to the court was served upon them and filed, did not oust the court of its jurisdiction.

PETITION FOR A HIGHWAY. On the 4th day of December, 1848, John Stratton and others presented a petition to the Selectmen of Swanzey, for a new highway, " beginning near the

residence of William Clark, of Swanzey, and thence running north-westerly to Chesterfield line."

No action was taken upon this petition by the selectmen, until the 18th day of May, 1849, when an order was made by them for a notice upon the land-owners to meet at W. C. Owen's Tavern, on the 4th day of June, 1849. In the mean time there was an article inserted in the warrant for the annual meeting in March, 1849, to see if the town would instruct the selectmen to lay out the highway prayed for by the petitioners. At said meeting it was voted, " that the selectmen are instructed to examine a route for a road from William Clark's to Chesterfield line, and if in their opinion, the public wants require it, to lay out said road, and cause the same to be built as soon as the town of Chesterfield shall build their's connecting with it."

On the 4th of June, the selectmen met and passed over the route, and then adjourned to July 7th, 1849, on which day they met again and made a further examination and survey of the route, but took no final action upon the matter. The hearing was closed, and the meeting dissolved, but there was no adjournment to any other time or place. Here the matter rested, until the 10th of August, 1849, there having been no record made in the town books, of any of the proceedings heretofore stated, except the action of the town at the annual meeting. On that day a notice was served upon the town clerk and one of the selectmen, of the pendency of a petition in this court, for a new highway in Swanzey and Chesterfield, " commencing at William Clark's house in Swanzey and running from thence in a north-westerly direction, on and over the best ground to the road, leading from said Chesterfield to Keene, about one half mile North, to the Lily Pond, in said Chesterfield, and also near the forks of the road, one of which leads to Keene, and the other to Westmoreland." This petition was filed in the office of the clerk of this court, August 10th, 1849, and was signed by John Stratton and 47 others. The routes described in the two petitions are identical only at the southern terminus, although they pass through the same section of country, and were intended to accommodate the same travel. On the 3d day of September,

1849, the selectmen of Swanzey came together again without notice, and surveyed and laid out a highway, varying somewhat from the route previously surveyed by them, and caused a record thereof to be made in the town books on the 4th day of September, 1849. The petition was committed to the road commissioners, September term, 1849, and the commissioners examined and surveyed the route in the latter part of October, 1849, and at the March term, 1850, made a report, laying out said highway, in Swanzey and Chesterfield. That part of the highway thus laid out, which lies in Swanzey, commences at the same place with the one laid out by the selectmen, and has the same general direction, though but a small portion of it is on the same ground.

The defendant objects that by reason of the action of the town of Swanzey, the court have no jurisdiction to lay out the road prayed for, as all that part in Swanzey is already laid out, and the remainder is in Chesterfield only ; and moves to dismiss the petition. The petitioners contend, that the delay by the selectmen is equivalent to a refusal to lay out the road.

*Wheeler,* (with whom was *Bennett,*) for the petitioners. The highway prayed for, being described as in Swanzey and Chesterfield, and the commissioners having laid out the whole route, the court have jurisdiction under the provision in the Revised Statutes, ch. 50, § 1, unless the jurisdiction did not attach, or was ousted by something which does not appear upon the face of the proceedings. And in this case it must have been by some action on the part of the town of Swanzey. It is believed, that if jurisdiction were once acquired by the Court of Common Pleas, no subsequent proceedings on the part of the town could oust that court of its jurisdiction. The question then is, had any thing been done by the town before the 10th day of August, 1849, which prevented the court from obtaining jurisdiction ? Even if the selectmen had decided to lay out the highway, it could not in fact be considered as laid out until their doings had been reduced to writing, and lodged with the town clerk. *Hayes* v. *Shackford,* 3 N. H. Rep. 10. But this had not

Stratton's Petition.

been done. In fact, there had not been any decision by the selectmen to lay out the highway. The affidavits we have submitted show, that there had been no assessment of damages to the land-owners. The case stands thus. The selectmen were asked to lay out the highway on the 4th day of December, 1848. They caused the route to be surveyed, but on the 10th day of August, 1849, there had been no highway laid out, there had been no adjournment to any other time, and no intimation that the subject would receive any further attention from them, and their proceedings appeared to be at an end. This, we contend, was such a "neglect" to lay out the highway as would authorize the court to proceed in a case where the route was all in one town. If a delay of eight months under the circumstances is not a neglect, it would be difficult to fix upon any lapse of time which might properly be so termed.

But if there had been an actually existing highway over the route described in the petition to the selectmen, this would not affect the question of jurisdiction, as " the routes are identical only at the southern terminus." Nor is it an objection, that they are intended to accommodate the same travel. This is true in many cases of new highways, both as to those that are, and those that are not near to old ones. Suppose that the commissioners instead of having laid out the highway from one terminus to another, had laid out the part in Chesterfield, and twenty rods in Swanzey next adjoining, though near another road. Would not this have been a valid proceeding?

It would be a fraud upon the petitioners, if the selectmen could lie by for eight months, and then, after proceedings were commenced in the Court of Common Pleas, and the road was about to be laid out, or was actually laid out, proceed to lay it out themselves, and thus subject the petitioners to the costs of the court, caused by the neglect of the selectmen.

*Carleton*, (with whom was *Dudley*,) for the town of Chesterfield.

That part of the highway prayed for which is in the town of Swanzey, had been previously laid out by the selectmen, and

become a road, and all that remained to be done was to lay out that part which is in the town of Chesterfield. The Court of Common Pleas, therefore, could acquire no jurisdiction to lay out a highway over the route prayed for ; because the road laid out in Swanzey, and the road laid out by the commissioners, must be regarded as one and the same road, laid out over the same route, up the same valley, and intended for one and the same purpose. This the petitioners understood and admitted, for they are the same in both petitions. And now to assume any other position, would be a mere quibble on the part of the petitioners, which we think the court will be reluctant to tolerate. And slight variations by the commissioners from the course marked out by the selectmen, will not affect the principle for which the town of Chesterfield contends.

Assuming, then, that there is but one road contemplated by the petitioners, the court could acquire no jurisdiction if the selectmen had previously laid out a highway over the same route.

The question is, was there such a delay on the part of the selectmen, as was equivalent to a neglect or refusal to lay out this road, so as to give the court jurisdiction in the matter ?

It appears, by the affidavits we have submitted, that the petitioners and those in favor of the road recognized the doings of the selectmen, and contended, before the commissioners, that the part of the road situated in Swanzey had been laid out by them ; and the sole object of the petitioners in applying to the court, was, to force the town of Chesterfield to build the road in that town to connect with the road laid out by the selectmen of Swanzey. From the 4th of June, the time of the first meeting of the selectmen, to the 3d of September, while this matter was under consideration, it was not such a neglect as to justify the presumption that they did not intend to lay out the road prayed for.

GILCHRIST, C. J. The Court of Common Pleas have jurisdiction to cause a road to be laid out in a town, whenever the selectmen shall neglect or refuse to lay it out. Rev. St. ch. 50, § 1. The first question in this case is, whether there is evidence of such a neglect or refusal as is contemplated by the statute.

When a petition for a highway is presented to the selectmen, it is their duty to act upon it, and either to lay out the road, or refuse to do so within a reasonable time. The parties interested should be informed of their decision as early as is practicable, so that there may be no more delay than the circumstances of the case require. Of course the power of the selectmen should in no case be exercised in such a way as to hold out expectations to the petitioners which the selectmen never intend to realize, and to induce them to believe that the road will be laid out, when the object of the board is to defeat it. The selectmen have no more right to bring their wishes as individuals to bear upon the question, than has any other tribunal which is invested with authority over the rights of others. They have a right to exercise their judgment, and to refuse to lay out the road. But as it is their duty to exercise their judgment, they have no right to neglect this duty, and to omit making a decision. But if such an omission appear, the Court of Common Pleas have the power to apply a remedy.

In the present case, the selectmen suffered the matter to remain pending before them from the 4th of December, 1848, to the 7th of July, 1849. In the intermediate period they examined the ground, but on the day last named, they separated without any adjournment, and without any record having been made of their proceedings upon the books of the town. Now they did not refuse to lay out the road, they did not notify the petitioners that their application was rejected, but they permitted the proceedings to come to an end, without declaring any decision whatever. This, we think, is clearly such a neglect on their part as the statute contemplated, and as gives the Court of Common Pleas jurisdiction over the subject-matter.

The next question is, whether the subsequent action of the town of Swanzey can oust the court of its jurisdiction. It appears that the selectmen were notified of this petition to the court, on the 10th day of August. On the 3d of September, they met without any notice to anybody, and laid out a highway, and caused it to be recorded. It would seem, that they suddenly awoke to the importance of the matter, and the business

which for eight months they had omitted to attend to, was hastily disposed of, as soon as they found that it was to be brought before the court. But the court had already acquired jurisdiction, and the final laying out of the road, the object of which at that late day would seem to have been the defeat of the petition pending in the Court of Common Pleas, cannot take away the jurisdiction which the law had thus conferred. There must be, therefore, a judgment of acceptance upon the report of the commissioners.

*Report accepted.*